IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVEN H. BYLE, | ) |
| | ) |
|     Plaintiff, | ) |
| v. | )   CASE NO. 1:23-cv-144-RAH-SMD |
| | ) |
| MAGGIE ADAMS I, an Alabama | ) |
| Business Trust, | ) |
| | ) |
|     Defendant. | ) |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pro se plaintiff Steven Byle ("Byle") filed this declaratory judgment action for the Court to determine, *inter alia*, whether he is a beneficiary of the Maggie Adams I business trust ("the Trust"). Compl. (Doc. 1) p. 8. The Trust moves to dismiss the complaint for, *inter alia*, lack of subject matter jurisdiction. Mot. (Doc. 7). For the following reasons, the undersigned RECOMMENDS that the Motion be GRANTED and that this case be DISMISSED.

**I.   FACTUAL BACKGROUND[1]**

In 1997, Monty Wayne Ervin ("Monty") and Patricia Ervin ("Patricia")[2] (collectively, "the Ervins") formed the Trust, naming their children, Dale Anthony Ervin ("Dale") and Stacy Ervin ("Stacy") as beneficiaries. Compl. (Doc. 1) ¶ 13. The Ervins then created subordinate trusts and transferred the interests of those trusts to the Trust. *Id*. at ¶¶

---

[1] For purposes of the motion to dismiss, the Court considers the well-pleaded facts set forth in the Complaint as true and construes them in the light most favorable to Byle. *See Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013).

[2] Patricia Ervin is now Patricia Peaster. Mot. (Doc. 7) p. 2.

1

14, 15. The subordinate trusts held approximately 200 rental properties that generated an average of $85,000.00 of rental income per month. *Id*. at ¶ 18.

In 2011, the Ervins were indicted for tax and other crimes related to the rental income from the subordinate trusts. *Id*. at ¶ 24. In 2013, Patricia sued Monty in a civil action in the Circuit Court of Houston County to remove him as trustee of the Trust. *Id*. at ¶¶ 16, 31. While that litigation was pending, Monty transferred one-half of the beneficial interests of the subordinate trusts to Jean Adams Dean ("Dean"). *Id*. at ¶ 32. Monty was later removed as the trustee of the Trust but remained trustee of the subordinate trusts. *Id*. at ¶ 17.

On September 15, 2021, in exchange for $100, Dean assigned to Byle her right, title, and interest to (1) recover the money she paid to defend Monty in the litigation to remove him as trustee of the Trust; (2) "any action to determine who is the rightful owner of the beneficial interest of numerous trusts created by [the Ervins] which were initially transferred to [the Trust] and later transferred by Monty[ ] to [ ] Dean"; and (3) "[a]ny other claim [Dean] may have against [the Trust] and/or its Trustees and beneficiaries[.]" Ex. 1 (Doc. 1-1) p. 2.

Byle filed suit in this Court against the Trust on October 18, 2021, asserting essentially the same claims as he asserts here. *See Steven H. Byle v. Maggie Adams 1*, 1:21-cv-696-RAH-KFP, Compl. (Doc. 1). In that case, this Court found that it did not have subject matter jurisdiction over the complaint because Byle had not shown that the amount in controversy was met for diversity jurisdiction to attach. Opinion (Doc. 35). Thus, on

2

March 9, 2023, this Court dismissed Byle's complaint without prejudice. Order (Doc. 35). Byle filed his current complaint less than a week later. Compl. (Doc. 1).

## II.  BYLE'S CLAIMS

Count I is a declaratory judgment claim that asks the Court to determine, *inter alia*, whether (1) the Trust and one of the subsidiary trusts are valid legal entities; (2) the vesting of the interest in the declaration of the Trust and one of the subsidiary trusts violates the rule against perpetuities; and (3) the subordinate trusts gave Monty the authority to transfer half of the beneficial interests of the subordinate trusts to Dean. Compl. (Doc. 1) pp. 7-8. Assuming there was authority to transfer the beneficial interests, Byle asks the Court to declare that he is beneficiary of the trusts and entitled to "all associated benefits accrued from that status" as of the date of the assignment. *Id*. at 8.

Count II is a claim brought under Ala. Code § 19-3-66, which provides that a business trust may be sued for debts and other obligations incurred by the trustees. *Id*. at 8-9. Byle seeks $64,900.00 owed to Dean for Monty's legal bills and expenses. *Id*. at 9. Count III is a claim for unspecified supplemental relief based on the declaratory judgment claim. *Id*.

## III.  JURISDICTION

Federal courts are courts of limited jurisdiction. *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005). As such, federal courts only have the power to hear cases they have been authorized to hear by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: (1) cases that arise under

federal law, § 1331, and (2) cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, § 1332(a). *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). Courts presume that causes of action "lie[ ] outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377.

A challenge to the court's subject-matter jurisdiction may be facial or factual. A Rule 12(b)(1) facial attack is based on the allegations of the complaint, which are taken as true and reviewed for plausibility, as with a Rule 12(b)(6) motion. *See Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009); *see also Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (plausibility standard). A factual attack, "on the other hand, challenge[s] the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).

Byle contends that this Court has diversity jurisdiction over his complaint. Compl. (Doc. 1) p. 2. The Trust disagrees, arguing that diversity jurisdiction is lacking because Byle has not shown that the amount in controversy is satisfied or that the parties are completely diverse. Mot. (Doc. 7) pp. 4-6, 9-13. The undersigned examines each argument in turn.

### A. Amount in Controversy

The amount in controversy requirement is generally satisfied where the plaintiff claims a sufficient sum in good faith unless "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *St. Paul Mercury Indem. Co. v. Red Cab Co.*,

303 U.S. 283, 289 (1938); *Dewitte v. Foremost Ins. Co.*, 171 F. Supp. 3d 1288, 1289 (M.D. Fla. 2016) (noting that amount in controversy is usually satisfied "absent facts demonstrating to a legal certainty that the claim is really for less than the jurisdictional amount"). If the amount in controversy is not obvious from the face of the complaint, a court may consider "evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations" to determine if the threshold is met. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). A plaintiff may aggregate multiple claims to meet the amount-in-controversy requirement. *Andrews v. Med. Excess, LLC*, 863 F. Supp. 2d 1137, 1139 (M.D. Ala. 2012).

Here, Byle seeks $64,900.00 for legal fees owed to Dean under Ala. Code § 19-3-66. Compl. (Doc. 1) p. 9. It is clear, then, from the face of the complaint that at least $64,900.00 is in controversy. As such, the monetary value of Byle's remaining claims must be at least $10,100.00 for the amount in controversy to be met.

Byle seeks a declaratory judgment that he "is entitled to the status of beneficiary [of the subordinate trusts] and all associated benefits accrued from that status as of May 8, 2014." *Id*. at 8. When a plaintiff seeks declaratory relief, "the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1074 (11th Cir. 2000). To invoke the court's jurisdiction for a declaratory judgment claim, the plaintiff "bears the burden of proving by a preponderance of the evidence" that the jurisdictional amount in controversy is met. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). This merely requires the plaintiff to convince the Court "that it is more likely than not that

the pleading satisfies the jurisdictional minimum." *Co. & Cas. Ins. Co. v. Metal Roofing Sys.*, 2013 WL 5770730, at *3 (S.D. Fla. Oct. 24, 2013).

Byle does not explicitly identify the amount he seeks for the declaratory judgment claim in Count 1; however, it is clear from the face of the complaint that he is seeking more than $10,100.00. In the jurisdictional statement of the complaint, Byle alleges that the value of the declaratory judgment has been increasing by $42,500.00 each month since May 2014. Compl. (Doc. 1) at 2. In support thereof, Byle asserts that, "[i]n a sworn deposition taken during the [trustee] removal action, a member of TPM Services testified that the trust entities held approximately 200 rental properties . . . which generated on average $85,000 in rental income per month." *Id*. at 4. Thus, because he is seeking to be declared beneficiary of half of the beneficial interests of the subordinate trusts, Byle contends that the value of the declaratory judgment increases monthly by $42,500.00. *Id*. at 2.

Taking Byle's allegation as true and drawing a reasonable inference from it, the undersigned finds that Byle is seeking *at least* $42,500.00 for his declaratory judgment claim. *See Montgomery Kidney Specialists, LLP v. Physicians Choice Dialysis of Ala., LLC*, 2020 WL 570137, at *8 (M.D. Ala. Feb. 5, 2020) (holding that the amount-in-controversy was satisfied where the evidence, "combined with reasonable deductions, reasonable inferences, and reasonable extrapolations, establishe[d] by a preponderance of the evidence" that the value of the declaratory judgment was greater than $75,000). When aggregating that amount with the $64,900.00 that Byle seeks to recover for legal fees, the amount-in-controversy requirement is satisfied.

B.   **Diversity of Citizenship**

Byle alleges that he is a citizen of Florida and that the Trust, which purports to be an Alabama business trust, is a citizen of Alabama. Compl. (Doc. 1) p. 1. On the face of the complaint, then, the parties appear to enjoy complete diversity.

The Trust argues, however, that the assignment from Dean to Byle was made "improperly or collusively" to invoke the Court's jurisdiction. Mot. (Doc. 7) pp. 9-10. According to the assignment, Dean's address is in Houston County, Alabama. Ex. 1 (Doc. 1-1) p. 2. Therefore, the Trust contends that if the assignment is improper, the parties would not be diverse, and this Court would lack subject matter jurisdiction over the complaint. Compl. (Doc. 1) pp. 11-12.

Twenty-eight U.S.C. § 1359 states that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." An assignment may be collusive and violate § 1359 when the assignor retains an interest in the assigned claims, the assignee has no previous connection in the matter, and the assignment is made for the sole purpose of accessing the federal courts. *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 827-28 (1969); *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1315 (11th Cir. 2007). Even so, where a claimant makes a bona fide, absolute transfer of his claims for the purpose of invoking federal jurisdiction, federal jurisdiction will be proper "so long as the succession and transfer were actual, not feigned or merely colorable." *Ambrosia Coal*, 482 F.3d at 1315 (quotations omitted). In determining if a transfer is collusive, a court should examine whether (1) consideration was exchanged for the

7

assignment, and (2) the assignment constituted an absolute transfer of rights or interests. *Id*. at 1315-16.

The assignment from Dean to Byle reads in its entirety as follows:

> This Assignment is made by and between Jean Adams Dean, ("Assignor"), located at 708 Moss Street, Dothan[,] Alabama, and Steven H[.] Byle ("Assignee"), subject to the following terms and conditions:
>
> For value received consisting of $100 and other good and valuable consideration, the Assignor sells, assigns, and transfers to the Assignee all right, title, and interest to the causes of action listed in any action to (1) recover monies paid for Monty Ervin to defend litigation brought against him while he was purportedly the Trustee of Maggie Adams 1, an Alabama Business Trust, and (2) any action to determine who is the rightful owner of the beneficial interest of numerous trusts created by Monty Ervin and Patricia Ervin which were initially transferred to Maggie Adams 1, and later transferred by Monty Ervin to Jean Adams Dean; and (3) Any other claim she may have against Maggie Adams 1, and/or its Trustees and beneficiaries in either their representative or personal capacities. The laws of the State of Florida shall govern this Agreement[.]

Ex. A (Doc. 1-1) p. 1. As explained below, the undersigned finds that the assignment was made "improperly or collusively" to invoke the Court's jurisdiction. Thus, the complaint should be dismissed.

**(1) <u>Whether consideration was exchanged for the assignment.</u>**

The consideration exchanged for the assignment is nominal. "Nominal consideration" is "[c]onsideration that is so insignificant as to bear no relationship to the value of what is being exchanged." Black's Law Dictionary (11th ed. 2019). "Gross disproportion between the payment and the value of the option commonly indicates that the payment was not in fact bargained for but was a mere formality or pretense." *Id*. Here, the assignment requires Byle to pay Dean $100 "and other good and valuable

8

consideration" for Dean's "right, title, and interest" to recover approximately $65,000.00 in legal fees and, approximately $42,500.00 of monthly income accruing since May 2014. A $100 exchange for such a potentially large recovery is nominal[3] and suggestive of improper and collusive assignment. *Compare Cross v. Allen*, 141 U.S. 528 (1891) (holding that it is not a collusive transaction *when valuable consideration is paid* to transfer a debt to a bona fide purchaser, even if the transfer was for the purpose of invoking diversity jurisdiction) *with Lehigh Mining & Manuf. Co. v. Kelly*, 160 U.S. 327 (1895) (holding that jurisdiction was collusively obtained when a corporation made a grant of disputed land to a newly-created, out-of-state corporation *without exchanging any valuable consideration*).[4]

### (2) Whether the assignment constituted an absolute transfer of rights or interests.

Moreover, Dean did not make an absolute transfer of her rights in the trusts. Here, in relevant part, Dean assigned Byle "all right, title, and interest" to the claims in a suit to determine the rightful owner of the beneficial interests of numerous subordinate trusts comprising the Trust. This assignment is not an absolute transfer of Dean's rights, title, or interests, if any, in the Trust or the subordinate trusts. Notably, Dean does not assign her

---

[3] *See KH Outdoor, LLC v. City of Trussville,* 465 F.3d 1256, 1259 (11th Cir. 2006) (describing damages of $100 as "nominal"); *Fields v. Diamond Resorts, Int'l, Inc*., 2017 WL 11002074,a t *4 (M.D. Fla. May 4, 2017) (finding that a general release of $100 was nominal); *In re Winston*, 181 B.R. 589, 592 (Bankr. N.D. Ala. Jan. 18, 1995) ("The courts, in referring to the term 'nominal,' frequently use it interchangeably with the sum of one dollar or some other piddling amount; but the real yardstick in determining whether the option price is nominal or substantial would appear to hinge on whether that price bears a resemblance to the fair market price of the article.") (quoting *In re Universal Med. Servs., Inc.,* 8 U.C.C. Rep. Serv. 614, 1970 WL 12640 (Bankr. E.D. Pa. 1970)).

[4] The undersigned acknowledges that it is not clear whether Byle provided Dean with any "other good and valuable consideration" as stated in the assignment. But even if he did, it is of no consequence because as discussed further herein the assignment was not absolute.

9

ownership in—or any monetary benefits she receives from—the Trust or the subordinate trusts. Instead, she assigns merely her right, title, and interest to the <u>claims</u> in a suit to determine the owner of the subordinate trusts. Under the assignment, then, if it were to be determined that Dean is the rightful 50% owner of the subordinate trusts, she would maintain the benefits of her ownership and those benefits would not flow to Byle.

Additionally, Dean does not transfer her right, title, and interest to claims involving <u>all</u> subordinate trusts that Monty purportedly transferred to her. Instead, she assigns merely her right, title, and interests to the claims involving <u>numerous</u> subordinate trusts. Numerous does not necessarily encompass all. Therefore, the assignment is not an absolute transfer of Dean's rights, title, or interests, if any, in the Trust or the subordinate trusts.

**(3) <u>Whether the timing of the assignment suggests collusion.</u>**

Finally, Dean's assignment was executed one month before Byle filed his first suit in this Court. This raises the undersigned's concern that the assignment was executed to create diversity between the parties. *See Ffrench v. Ffrench*, 781 F. App'x 930, 933 (11th Cir. 2019) (unpublished) ("[T]he fact [that the] assignment was executed the day before [the] complaint was filed in the district court raises the concern the assignment was done to avoid destroying diversity, as diversity is measured at the time of filing the complaint."); *see also Airlines Reporting Corp. v. S.& N Travel, Inc.*, 58 F.3d 857, 863 (2d Cir. 1995) (considering the timing of an assignment in determining whether it was collusive); *Westinghouse Credit Corp. v. Shelton*, 645 F.2d 869, 871 (10th Cir. 1981) (same).

### IV.   CONCLUSION

In conclusion, the undersigned finds that this Court lacks subject matter jurisdiction over Byle's complaint because the assignment from Dean to Byle violates 28 U.S.C. § 1359.

Accordingly, for the reasons set for above, the Magistrate Judge RECOMMENDS that the Trust's Motion to Dismiss (Doc. 7) be GRANTED and this case be DISMISSED.

It is further ORDERED that **on or before October 31, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 17th day of October, 2023.

_____
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE